STRATTON v. THE UNION PACIFIC RAILROAD COMPANY.

1. EVIDENCE—QUANTUM OF PROOF—RAILROAD FIRES.

The evidence required to establish the fact that a fire was caused by the operation of a railroad must be direct and connect the fire with such operation, or the circumstances must be such as to preclude all probability of the fire having originated in any other way.

2. PRACTICE—NONSUIT.

It is not only the privilege but the duty of the court to enter a nonsuit where the evidence does not warrant a verdict for the plaintiff.

*Appeal from the District Court of Logan County.*

Messrs. ALLEN & WEBSTER, for appellant.

Messrs. TELLER, ORAHOOD & MORGAN, for appellee.

REED, P. J., delivered the opinion of the court.

Appellant brought suit against the Railway Company for damages sustained by him personally, and as assignee of sup-

posed claims for damages sustained by others, by fire alleged
to have been set out from an engine of the defendant.    The
suit was brought in the county court; a trial had, resulting
in a judgment for the plaintiff; the case was taken to the
district court, a trial entered upon; at the close of plaintiff's
testimony defendant moved for a nonsuit, which was sus-
tained, and an appeal prosecuted to this court.

The only question presented is whether the court erred in
ordering a nonsuit.    The testimony showed that April 1st.
a fire started in the vicinity of the railway track, very near
to it, very shortly after the passing of an engine, and was
stated to have been communicated from the engine; that
the fire was driven easterly by a comparatively strong wind,
the burned tract widening as the fire progressed.    In the lan-
guage of one witness, "it burnt over a funnel shaped strip
containing about 60 acres, the fire was then supposed to have
been extinguished."    A witness stated the case as follows:

"At that time the fire had jumped the Sterling ditch and
the butts of an alfalfa stack were still burning.    These stack
bottoms were probably 25 or 30 rods further south of the
burnt strip, ninety feet by his measurement from the end of
the burnt strip.    This stack bottom consisted of the bottom
of the hay stack and probably had some manure in it.    Had
experience with prairie fires; knew that dung dropped by
cattle would burn, that this was a dry time of year, that this
beaten down stack had manure in it, and that manure would
burn for some time.    Saw fire there and smoke for perhaps
five days after; was within 25 rods from it.    Saw the fire of
the 6th of April after it started some twelve or fifteen min-
utes when he overtook it.    He rode to it on horseback.    The
country was level and he saw no one there; nor did he see
any one leave.    This new burnt district was funnel shaped
and the apex was rather to the west of the center of the
burnt hay stack.    This was the same fire that burnt over the
Stratton, Winch and Young place." * * * Another wit-
ness testified that the fire was extinguished about 60 or 70
rods from the railway.    Subsequently, on the 6th of April, a

fire broke out, the apex of which " was rather to the west of
the center of the burnt hay stack. *This was the same fire
that burnt over the Stratton, Winch and Young places.*"

As near as I can arrive at it, the theory of the case was
that the fire supposed to have been set out by the engine
and to have been extinguished on April 1st had been com-
municated to the stack bottom and manure, where the wit-
ness testified he " saw fire there and smoke for perhaps five
days after," and, after smoldering and burning for that length
of time, it was communicated to the grass, and that the fire
of April 6th that caused damage had its origin at that point
and in that way. Such origin was not shown by any evi-
dence whatever; appears to have been entirely suppositions,
and inferred from the facts. Admitting that the fire of the
1st was set by the engine, the connection between the two
was not established by any competent testimony, and the
supposed result very remote from the alleged cause. In
cases of this character, there must be either direct proof con-
necting the fire with the engine or the circumstances must
be such as to preclude all probability of the fire having orig-
inated in any other way. Such was not the character of
proof adduced to establish liability of the defendant. Sup-
position and inference will not supply the place of competent
proof. That the smoldering stack bottom was the origin
of the subsequent fire is not satisfactorily established. It is
based entirely upon the fact that the apex of the new burnt
district " was rather to the west of the center of the burnt
hay stack." How far is not stated, but at some distance is
inferable from the evidence of the witness,—" that he had
seen the wind roll manure, and that the wind rolling it
would not put it out." That the fire may have caught in
the supposed manner is possible, perhaps probable, but the
evidence does not establish the fact. It may have been inten-
tionally set out, or the result of carelessness, or, in fact, origi-
nated in any of the many various ways that destructive fires
orginate.

The supreme court and this court have had the statute

under which this action was brought under consideration; this court several times.

In *Denver, T. & G. R. R. Co. v. De Graff*, 2 Colo. App. 45, and in *D. & R. G. R. R. Co. v. Morton*, 3 Colo. App. 155, the requisite amount of proof necessary to enable a plaintiff to recover was clearly and explicitly stated, and this court has seen no reason for modifying what was then announced, or receding from the position taken in those cases, and they are conclusive in this. The judgment of the court in ordering a nonsuit must be sustained. It is not only the privilege but the duty of the court to nonsuit where the evidence does not warrant a verdict for the plaintiff. *Tripp v. Fiske*, 4 Colo. 24; *U. P. Railway v. Sternberg*, 13 Colo. 141; *Sullivan v. Cheysolite Co.*, 21 Fed. Rep. 892; *Sternbergh v. Iron Co.*, 156 Pa. St. 34.

Judgment affirmed.

*Affirmed.*