Reed, P. J.,
delivered the opinion of the court.
Appellant brought suit against the Railway Company for damages sustained by him personally, and as assignee of sup *127 posed claims for damages sustained by others, by fire alleged to have been set out from an engine of the defendant. The suit was brought in the county court; a trial had, resulting in a judgment for the plaintiff; the case was taken to the district court, a trial entered upon; at the close of plaintiff’s testimony defendant moved for a nonsuit, which was sustained, and an appeal prosecuted to this court.
The only question presented is whether the court erred in ordering a nonsuit. The testimony showed that April 1st. a fire started in the vicinity of the railway track, very near to it, very shortly after the passing of an engine, and was stated to have been communicated from the engine; that the fire was driven easterly by a comparatively strong wind, the burned tract widening as the fire progressed. In the language of one witness, “ it burnt over a funnel shaped strip containing about 60 acres, the fire was then supposed to have been extinguished.” A witness stated the case as follows:
“At that time the fire had jumped the Sterling ditch and the butts of an alfalfa stack were still burning. These stack bottoms were probably 25 or 80 rods further south of the burnt strip, ninety feet by his measurement from the end of the burnt strip. This stack bottom consisted of the bottom of the hay stack and probably had some manure in it. Had experience with prairie fires; knew that dung dropped by cattle would burn, that this was a dry time of year, that this beaten down stack had manure in it, and that manure would burn for some time. Saw fire there and smoke for perhaps five days after; was within 25 rods from it. Saw the fire of the 6th of April after it started some twelve or fifteen minutes when he overtook it. He rode to it on horseback. The country was level and he saw no one there; nor did he see any one leave. This new burnt district was funnel shaped and the apex was rather to the west of the center of the burnt hay stack. This was the same fire that burnt over the Stratton, Winch and Young place.” * * * Another witness testified that the fire was extinguished about 60 or 70 rods from the railway. Subsequently, on the 6th of April, a *128 fire broke out, the apex of which “ was rather to the west of the center of the burnt haystack. This was the same fire that burnt over the Stratton, Winch and Young places.”
As near as I can arrive at it, the theory of the case was that the fire supposed to have been set out by the engine and to have been extinguished on April 1st had been communicated to the stack bottom and manure, where the witness testified he “ saw fire there and smoke for perhaps five days after,” and, after smoldering and burning for that length of time, it was communicated to the grass, and that the fire of April 6th that caused damage had its origin at that point and in that way. Such origin was not shown by any evidence whatever; appears to have been entirely suppositions, and inferred from the facts. Admitting that the fire of the 1st was set by the engine, the connection between the two was not established by any competent testimony, and the supposed result very remote from the alleged cause. In cases of this character, there must be either direct proof connecting the fire with the engine or the circumstances must be such as to preclude all probability of the fire having originated in any other way. Such .was not the character of proof adduced to establish liability of the defendant. Supposition and inference will not supply the place of competent proof. That the smoldering stack bottom was the origin of the subsequent fire is not satisfactorily established. It is based entirely upon the fact that the apex of the new burnt district “ was rather to the west of the center of the burnt hay stack.” How far is not stated, but at some distance is inferable from the evidence of the witness, — “ that he had seen the wind roll manure, and that the wind rolling it would not put it out.” That the fire may have caught in the supposed manner is possible, perhaps probable, but the evidence does not establish the fact. It may have been intentionally set out, or the result of carelessness, or, in fact, originated in any of the many various ways that destructive fires orginate.
The supreme court and this court have had the statute *129 under which this action was brought under consideration; this court several times.
In Denver, T. & G. R. R. Co. v. De Graff, 2 Colo. App. 45, and in D. & R. G. R. R. Co. v. Morton, 3 Colo. App. 155, the requisite amount of proof necessary to enable a plaintiff to recover was clearly and explicitly stated, and this court has seen no reason for modifying what was then announced, or receding from the position taken in those cases, and they are conclusive in this. The judgment of the court in ordering a nonsuit must be sustained. It is not only the privilege but the duty of the court to nonsuit where the evidence does not warrant a verdict for the plaintiff. Tripp v. Fiske, 4 Colo. 24; U. P. Railway v. Sternberg, 13 Colo. 141; Sullivan v. Cheysolite Co., 21 Fed. Rep. 892; Sternbergh v. Iron Co., 156 Pa. St. 34.
Judgment affirmed.

Affirmed.